**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BOWMAN CONSTRUCTION COMPANY,      )
                                       )
          Plaintiff,              )
                                       )     Case No. 18-1822C
                                       )     (Senior Judge Williams)
                                       )
          v.                     )
                                       )
THE UNITED STATES,               )
                                       )
          Defendant.            )

---

**PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO R.C.F.C. 37(c)**

---

Plaintiff, Bowman Construction Company ("Bowman"), through counsel FOX ROTHSCHILD LLP, submits its Motion for Sanctions Pursuant to R.C.F.C. 37(c) ("Motion") as follows:

**CERTIFICATE OF CONFERRAL**

Plaintiff's counsel conferred with opposing counsel on numerous occasions to obtain timely and complete disclosures without Court intervention. Further, Plaintiff's counsel raised the issues set forth in this Motion, and Plaintiff's request for sanctions, with opposing counsel and the Court during the Court supervised deposition of David Driapsa on November 20, 2019.

**I.**        **SUMMARY OF THE RELIEF REQUESTED**

Bowman asserts claims against the United States ("the Government") arising out of Bowman's construction of the Rainy Lake Bicycle Trail project in Voyageurs National Park near International Falls, Minnesota (the "Project"). Bowman claims that the Government breached its contractual obligations and its duty of good faith and fair dealing when it improperly terminated

Bowman for default. The parties have completed fact discovery, are well into expert discovery and a 5-day trial is set to commence on June 22, 2020.

This Motion pertains to the Government's pattern of neglect and disregard of its discovery obligations that commenced at the outset of this case and culminated with the substantially late and prejudicial disclosure of 2,928 pages of documents on the eve of David Driapsa's November 20, 2019 deposition in Naples, Florida.[1] Notwithstanding the Government's obligation under this Court's initial Scheduling Order and R.C.F.C. 26(a)(1) that required disclosure by June 10, 2019, the Government waited until the afternoon of November 18, 2019 to send a hard drive of 2,928 pages of Project-related documents to Bowman's counsel. The previously undisclosed documents did not arrive at counsel's office in Denver until November 19, 2019, when counsel was already on route to Mr. Driapsa's deposition in Naples, Florida. As the Court is aware from its own attendance at Mr. Driapsa's deposition, the deposition proceeded without undersigned counsel having the opportunity to review and use the late disclosed documents.[2]

There is no reasonable justification for the Government's late disclosure as these Project-related documents were located at the National Park Service's office at the location of the Project – the first place that the Government should have checked for relevant documents to be disclosed. Nor was the late disclosure harmless as the 2,928 pages of Project-related documents

---

[1] As the Court will recall, Mr. Driapsa initially acted as the Project's Inspector and then as the Contracting Officer's Representative.

[2] Mr. Driapsa was the last of the three Government witnesses deposed by Bowman. Prior to Mr. Driapsa's deposition, Bowman deposed Karen Thomas, the Contracting Specialist, and Dale Allen, the Contracting Officer. As such, Bowman did not have the opportunity to review the late disclosed 2,928 pages of documents for any of its fact depositions.

contained a voluminous amount of previously undisclosed internal Government communications, notes, memoranda and plans that are critical to Bowman's case. Indeed, these internal documents contain numerous admissions by the Government that contradict its official position in communications with Bowman and go a long way to establish the bad faith in which the Government administered the contract. However, the Government's late disclosure prevented Bowman from questioning the Government's fact witnesses about these critical documents during depositions and substantially prejudiced Bowman's trial preparation and presentation.

The Government's supplemental production on the eve of Mr. Driapsa's deposition is only the latest episode of misconduct in the Government's pattern of discovery abuse and noncompliance in this case. From the very outset, the Government refused to timely disclose documents required under R.C.F.C. 26(a)(1), failed to cooperate with Bowman in the scheduling of fact witness depositions and disregarded its obligations to adequately and timely respond to written discovery. The Government's misconduct to date has already necessitated revisions to the Scheduling Order, the rescheduling of at least one deposition and intervention by this Court in the form of the granting Bowman's motion to compel production of certain interrogatory responses and documents. While Bowman has so far resisted a request for sanctions, the Government's latest misstep cannot go unchecked. The documents in the Government's supplemental production are not "most[ly] duplicates" as represented by the Government at Mr. Driapsa's deposition, but rather previously undisclosed Project-related documents that are critical to Bowman's claims.

R.C.F.C. 37(c)(1) provides that the Court may issue sanctions against a party that "fails to provide information or identify a witness as required by R.C.F.C. 26(a) or (e)" unless the failure

was "substantially justified" or "harmless."  The sanctions authorized under the Rule include, but are not limited to, an order prohibiting the party from using the information at trial and an order for the payment of attorneys' fees and costs related to the failure. The Government's late disclosure of Project-related documents was neither substantially justified nor harmless and prejudiced Bowman by denying it the meaningful opportunity to depose the Government's fact witnesses and prepare for trial. As such, Bowman respectfully asks the Court to grant this Motion and enter an Order: (1) allowing Bowman to introduce or rely on the documents in support of a motion or at trial, but precluding the Government from doing so; (2) awarding Bowman its costs and attorneys' fees incurred in preparing for, traveling to and taking three out-of-state depositions of Government witnesses for which Bowman did not have use of the documents; and (3) awarding Bowman its costs and attorneys' fees in preparing this Motion.

## II.    RELEVANT FACTUAL BACKGROUND

The Government has demonstrated a flagrant and repeated disregard for its discovery obligations in this case. While the Court is likely aware of at least some of the Government's misconduct because it has had to intervene on several occasions, Bowman provides the following summary in order to make a record for the imposition of sanctions under R.C.F.C. 37(c).

### A.    THE GOVERNMENT'S LATE PRODUCTION OF INITIAL DISCLOSURE DOCUMENTS

1.    The Government served its Initial Disclosures pursuant to R.C.F.C. 26(a) on June 13, 2019. The following week, on June 20, 2019, Bowman formally requested copies of the Government's disclosure documents. The Government advised that counsel was reviewing the documents for privilege and would provide the documents to Bowman. *See* emails between S. Sears and M. Austin, various dates, attached as **Exhibit A**.

2.      Over one month later, Bowman had still not received any of the initial disclosure documents despite repeated request. On July 29, 2019, Bowman received notice that the Government's counsel was still "reviewing the documents for privilege." The Government further advised that it would provide a Clawback Agreement to allow for production of documents on August 2, 2019. *See* letter from M. Austin, dated July 29, 2019, attached as **Exhibit B**.

3.      As of August 6, 2019, the Government still had not provided its disclosure documents or the proposed Clawback Agreement. Bowman informed the Government that counsel needed the disclosure documents by August 9 to allow sufficient time for review to prepare for Karen Thomas' deposition then set for August 20, 2019.  *See* email from S. Sears, dated August 6, 2019, attached as **Exhibit C**.

4.      As of Friday, August 16, 2019, and despite multiple prior requests dating back close to two months, the Government still had not provided its initial disclosure documents. As such, Bowman was forced to cancel the out-of-state deposition of Ms. Thomas that was to occur the following Tuesday. *See* email from S. Sears, dated August 16, 2019, attached as **Exhibit D**.

B.      **THE GOVERNMENT'S FAILURE TO COOPERATE IN SCHEDULING DEPOSITIONS**

5.      Once the Government served Bowman with its Initial Disclosures identifying its witnesses with knowledge of the Project, Bowman formally requested dates for the depositions of three witnesses—Dale Allen, David Driapsa and Karen Thomas.  This request was made on June 19, 2019, and the Government responded that counsel would be in touch "later this week or next week" with availability.  *See* emails between S. Sears and M. Austin, dated June 19, 2019, attached as **Exhibit E**.

6.      Because the Government's counsel simply never responded with witness availability, Bowman followed up with its request for deposition dates on multiple occasions—July 11, July 16 and July 23—to no avail. *See* emails from S. Sears, various dates, attached as **Exhibit F**.

7.      On July 30, 2019—forty-one (41) days after Bowman's initial request and only after Bowman threatened Court intervention—the Government finally provided a deposition date of August 20, 2019 for the deposition of Ms. Thomas. As noted above, Bowman ultimately had to cancel and re-schedule this deposition at the last minute due to the Government's delay in producing its initial disclosure documents. Further, the Government did ***not*** provide deposition dates for Mr. Allen.  *See* **Exhibit B**.

8.      As to Mr. Driapsa, the Government informed Bowman—for the first time on July 29, 2019—that Bowman would have to subpoena Mr. Driapsa to force his deposition, but that it was holding August 14 for that deposition. Of course, August 14 was not a feasible date because Bowman would not be able to subpoena Mr. Driapsa and allow fourteen (14) days for objection per R.C.F.C. 45(d)(2)(B) within the time provided. Additionally, the Government failed to provide Mr. Driapsa's last known address to even allow a subpoena to be issued, despite Bowman's repeated requests for the same. *See* **Exhibits A, B and F**.

9.      Unbelievably, and despite the Government's obligation to provide the information per R.C.F.C. 26(a)(1)(A)(i), Bowman had to request the Court to compel the Government to provide Mr. Driapsa's last known address. In response to the Court's Order, the Government did not provide Mr. Driapsa's last known address until September 6, 2019 – ***seventy-nine (79) days after Bowman first requested the information***. *See* **Exhibit A**, and email from M. Austin, dated

September 6, 2019, attached as **Exhibit G**.

C.     **THE GOVERNMENT'S LATE DISCLOSURE AND FAILURE TO COOPERATE NECESSITATES A COURT CONFERENCE AND REVISED DISCOVERY DEADLINES.**

10.     Because of the Government's late disclosure of its initial documents and refusal to cooperate in the setting of key fact witness depositions, Bowman incurred costs for lost airfare related to the cancelled Karen Thomas deposition and was substantially stymied in its ability to prepare its case for trial within the original discovery deadlines. Accordingly, Bowman requested a case management conference with the Court, which took place on September 6, 2019, during which Bowman requested revised discovery deadlines. *See* Plaintiff's Request for a Case Management Conference, attached as **Exhibit H**.

11.     At the conference, the Court addressed some of the Government's discovery misconduct and set a revised discovery schedule. The Court substantially agreed with the deadlines proposed by Bowman and rejected the Government's efforts to further delay the case. As noted above, the Court also ordered the Government to provide Bowman with Mr. Driapsa's last known address for subpoena purposes and set Mr. Driapsa's deposition for November 19, 2019, in Naples, Florida. *See* Revised Scheduling Order, Sept. 9, 2019, CM/ECF Doc. No. 19. The deposition was ultimately re-set for November 20, 2019.

D.     **THE GOVERNMENT WITHHOLDS A CRITICAL DOCUMENT UNTIL THE DAY OF THE THOMAS DEPOSITION.**

12.     On September 26, 2019, during Ms. Thomas' rescheduled deposition, the Government, ***for the first time***, produced a document dated November 1, 2017, with the subject "Contracting Officer's Final Decision, Contract No. P11PC60388 Claim" ("Final Decision

7

Document"). *See* Final Decision Document, attached as **Exhibit I.**[3]

13.     Ms. Thomas was the Contracting Officer as of November 1, 2017, and she prepared the Final Decision Document based upon her review of "information contained in the Government's contracting file." *See* Excerpt of K. Thomas Deposition, attached as **Exhibit J**, at 54:19-55:24. While the Final Decision Document was "accurate" and represents Ms. Thomas' response to Bowman's initial submission of its claim, the Government never actually sent the Final Decision Document. *See* **Exhibit J**, 55:16-56:21.

14.     Significantly, the Final Decision Document contains Government admissions that "Work was performed on the Bike Parking Lot following the last recorded Pay Application, for which the Contractor may be entitled to reimbursement." Per the Final Decision Document, it was also Ms. Thomas' opinion that the Government "Need[ed] to compute monies owed for this work." *See* **Exhibit I**, at pp. 4-6; **Exhibit J**, 58:12-60:7.

15.     In this lawsuit, and despite the opinion of the last Contracting Officer that the Government owed Bowman monies for work performed, the Government has denied that Bowman is entitled to *any* amounts for its work on the Project. Obviously, undersigned counsel would have liked to review the Final Decision Document thoroughly in advance of Ms. Thomas' deposition, as opposed to receiving during the deposition, so that counsel could adequately examine her on its contents. However, the Government's late disclosure prevented undersigned counsel from doing so.

16.     More egregious is Ms. Thomas' testimony that she had provided the Final

---

[3] The Final Decision Document was marked as Deposition Exhibit No. 6.

Decision Document to the Government's counsel on August 20, 2019, when she met with him to prepare for the deposition. *See* **Exhibit J**, 50:25-51:4. Accordingly, and despite its obvious relevance and importance to Bowman's claims, the Government inexplicably waited ***thirty-eight (38) days*** to disclose the Final Decision Document and timed its disclosure so that Bowman had no opportunity to prepare for its use during Ms. Thomas' deposition.

### E.   THE GOVERNMENT'S LATE AND INSUFFICIENT DISCOVERY RESPONSES.

17.   On August 14, 2019, Bowman served the Government with Plaintiff's First Set of Written Discovery per R.C.F.C. 33, 34 and 36 ("Bowman's First Written Discovery"). The Government's Responses to Bowman's First Written Discovery ("Responses") were originally due by September 13, 2019. During the September 6, 2019 Status Conference, undersigned counsel agreed that the Government could have an extension to respond to Bowman's First Written Discovery up to October 1, 2019.

18.   It was important that the Government provide its Responses in accordance with this new deadline because Bowman wanted to review and potentially rely upon the Responses prior to the deposition of Dale Allen, the original Contracting Officer, which took place on October 10, 2019.

19.   The Government failed to provide its Responses on or before the agreed upon deadline and even failed to provide its Responses prior to the Dale Allen deposition. As such, on October 15, 2019, undersigned counsel sent the Government's counsel correspondence requesting the Responses and informing the Government that Bowman would seek relief from the Court because of the failure to respond to Bowman's First Written Discovery.  *See* email from S. Sears, dated October 15, 2019, attached as **Exhibit K**.

20.     The Government's failure to respond was extremely prejudicial as it deprived Bowman of the opportunity to (1) use the Government's Responses for deposition preparation, and (2) examine two critical Government witnesses (the Project's Contracting Officer and Contracting Specialist) on the Government's Responses.

21.     On October 21, 2019—sixty-nine (69) days after service of Bowman's First Written Discovery and twenty-one (21) days after the agreed upon deadline to respond—the Government finally provided its Responses to Bowman's First Written Discovery. The Responses were substantially deficient in that the Government did not adequately respond to five (5) interrogatories.

22.     Specifically, the Government refused to respond to Interrogatory No. 7, which concerned the Government's efforts both following the award of the Project to Bowman and following the termination of Bowman's contract.  The Government simply listed four individuals and stated that these individuals "were involved in some aspect of the contract," without any other responsive information or detail.

23.     The Government also refused to respond to Interrogatories Nos. 8, 9, and 10, which concerned Mr. Driapsa's performance as the Contracting Officer's Representative ("COR") for the Project.  The Government simply objected to the interrogatories as irrelevant, even though Mr. Driapsa's substandard performance as the COR for the Project, his improper modification of contract documents and his direction to Bowman outside of the scope of his authority are all central to Bowman's claims.

24.     Finally, the Government refused to respond to Interrogatory No. 13 concerning technical decisions by Government personnel in connection with the Project.  The Government

again objected to the interrogatory as irrelevant and failed to provide any response at all.

25.     Because the Government's Responses were facially inadequate, Bowman made an oral motion to compel during yet another conference with the Court on October 28, 2019.  The Court granted Bowman's motion to compel as follows:

> On October 28, 2019, the Court conducted a telephonic conference with the parties.  During the call, Plaintiff made an oral motion to compel production of certain interrogatory responses and documents regarding the Contracting Officer's Technical Representative (the "COTR").[1]  Specifically, Plaintiff sought interrogatory responses regarding the COTR's professional qualifications and performance reviews relating to the COTR's work on the construction of an off-road bicycle trail in Voyageurs National Park (the "Project"), and related documents.
>
> Plaintiff's oral motion to compel is **GRANTED**.  Defendant shall comply by producing to Plaintiff documents responsive to Plaintiff's interrogatories 8, 9 and 12, relating to the COTR's professional qualifications and performance reviews regarding the COTR's work on the Project.  Defendant shall produce responsive documents subject to an appropriate protective order.

*See* Order, Oct. 31, 2019, CM/ECF Doc. No. 23.

26.     Despite their obvious relevance to Mr. Driapsa's deposition, the Government did not provide any documents responsive to the Court's October 31, 2019 Order prior to his deposition on November 20, 2019.

### F.     THE GOVERNMENT'S LATE AND PREJUDICIAL PRODUCTION OF 2,928 PAGES OF PROJECT RELATED DOCUMENTS.

27.     Mr. Driapsa's Court-supervised deposition was set to take place in Naples, Florida, on November 20, 2019. Accordingly, Bowman's counsel arranged to travel to Florida from Colorado on the morning of November 19, 2019.

28.     At 3:11 p.m. on November 18, 2019, Bowman's counsel received the following email from the Government's counsel:

> **From:** Austin, Michael (CIV) <Michael.Austin@usdoj.gov>
> **Sent:** Monday, November 18, 2019 3:11 PM
> **To:** Sears, Spencer <ssears@foxrothschild.com>
> **Subject:** [EXT] Supplemental production
>
> Mr. Sears,
>
> Today I placed via Federal Express a disc containing a supplemental production which you should receive tomorrow. The password for the production is: 3~Q7*cAw;5^TG9Y.

*See* email from M. Austin, dated November 18, 2019, attached as **Exhibit L**.

29.    Thus, the Government's supplemental production of documents did not arrive in Denver until November 19, 2019, when counsel was already on route to Naples, Florida.

30.    Undersigned counsel's paralegal was able to open the documents when received on the afternoon of November 19, 2019, and relay to counsel via telephone that the production included 2,928 pages of documents. However, the sheer volume of the production prevented any meaningful review in advance of Mr. Driapsa's deposition. Of note, the supplemental documents came from the National Park Service office in Voyageurs National Park, *i.e.*, the location of the Project.

31.    Bowman raised the issue of the Government's late production of documents at the outset of Mr. Driapsa's deposition on November 20, 2019, and reserved the right to file this Motion to request sanctions under Rule 37.  *See* Excerpt of D. Driapsa Deposition, attached as **Exhibit M**, 4:17-17:19.

32.    During the Driapsa deposition, the Government's counsel claimed that the 2,928 pages of late disclosed documents were "most[ly] duplicates" and contained "relatively few new documents." **Exhibit M**, at 12:10-15. While there are some duplicate documents, that assertion grossly overstates the amount of duplicates disclosed and significantly understates the importance and value of the late disclosed documents.

178075\00001\106402005.v1

33.     Contrary to the statement of the Government's counsel, the late disclosed documents contained a voluminous amount of newly disclosed documents, frankly too many for counsel to efficiently count and compare to the Government's prior disclosure. Among the previously undisclosed documents were ***hundreds*** of internal emails exchanged between Government employees, handwritten notes, Project memoranda, Project design documents and plans and draft versions of official Project correspondence. Significantly, these documents contained Government admissions of fault and positions contrary to its "official position" taken with Bowman that would have been critical for use during depositions and for Bowman's counsel to effectively plan a discovery strategy.

34.     The following provides a mere sampling of the critical documents that the Government failed to timely disclose and prevented Bowman from using during fact discovery.

**a.     Internal Government Emails Containing Admissions of Fault and Awareness of Need for Additional Funds at the Outset of the Project**

35.     A significant issue in support of Bowman's claims is the fact that defects in quantity estimates and survey busts within the Project plans prepared by the Government and differing site conditions led to (1) cost overruns, (2) the need for additional funding to complete the Project and (3) revisions to the Project plans. In short, plan estimates related to the amount of blasted rock and imported fill needed to complete the bike trail were wrong and significant errors in grading elevations prevented Bowman from completing the Project without additional funding and design revisions.

36.     During the course of the Project, however, the Government took the position in its dealings with Bowman that any plan errors or revisions were "minor," that any material overruns were the fault of Bowman and the Government refused to seek additional funding to complete

the Project. However, internal emails not provided to Bowman and contained within the late disclosed 2,928 pages of documents tell a different story. The following are just examples:

- Emails sent early in the Project between Mr. Driapsa and the original Contracting Officer's Representative, Raoul Lufberry, revealed that the Government was aware that material overruns would mean that (1) plans would need to be revised to "reduce some of the long [side] slopes" as set forth in the original plans and (2) that the Government would have to "get funds and just pay the extra costs." *See* email from R. Lufberry, dated December 22, 2011, attached as **Exhibit N**.

- While the Government was aware in late 2011 that there was a need for additional funds to complete the Project, a problem occurred in Spring of 2012 – the Washington office of the National Park Service informed the Voyageur National Park that "They do not have any more funds to give us." *See* email from S. Stemm, dated March 27, 2012, attached as **Exhibit O**.

- After realizing that there would be no additional funds to complete the Project, the Government's dealings with Bowman drastically changed and its strategy to complete the Project shifted. The Government tried to revise the original plans to allow the completion of the Project without additional material or at no additional cost. However, the late disclosed emails prove that Mr. Driapsa was aware that these plan revisions would still "require additional [fill material] beyond the quantity already scheduled" and that such fill should be "installed by Contractor at the Contract Unit Price." As such, Driapsa requested a "contract modification," *i.e.*, a request for more money, which the Government eventually denied. *See* email from D. Driapsa, dated

14

May 23, 2012, attached as **Exhibit P**.

- In addition to trying to change the original plans, a Contract Document, the Government also blamed Bowman for material overruns and insisted that any plan revisions or errors were minor. However, an internal email from Mr. Driapsa shows that he informed the Contracting Officer that Project overruns of fill were due to a differing site condition – "less blasted rock . . . then scheduled." *See* email from D. Driapsa, dated June 19, 2012, attached as **Exhibit Q**.

- Proving that a differing site condition existed, a fact the Government is now denying, Mr. Driapsa also told the Contracting Officer that there was "***a discrepancy between the project drawings and the actual conditions in the field. The discrepancy is on the part of the government***." *Id.* (Emphasis added)

- Perhaps the most stunning admission of fault by the Government in the late disclosed emails – and a blatant contradiction of the position it formally took in its termination for default – is Mr. Driapsa's statement to the Contracting Officer that "***[t]he goodwill obtained through the Contractor bringing to our attention the possibility that the trail might be too high and his handling of the discrepancy through verification by his surveyor <u>increased our confidence that the work is being executed according to plan</u>***." *Id.* (Emphasis added).

- Despite Bowman's repeated requests for plan revisions, the Government insisted to Bowman that the plans were adequate to complete the Project. However, the late disclosed documents reveal that Mr. Driapsa, without informing Bowman, emailed an engineer with the Minnesota state government, acknowledged Bowman's concerns

15

with the plans and asked the engineer to "***help us with making some revisions to the bike trail plan***." This admission of problems with the plans occurred just ***six (6) days*** before the Government sent its cure notice to Bowman that served as the basis for its termination for default. *See* email from D. Driapsa, September 6, 2012, attached as **Exhibit R**. (Emphasis added).

- The Government took the position with Bowman that the contract was a "firm fixed price" contract which put all the risk on Bowman for material overruns, as opposed to an "unit price" contract, which shifts that risk to the Government who would be obligated to pay Bowman the agreed upon unit price for actual quantities installed. However, in an internal email to Dale Allen, the Contracting Officer, Mr. Driapsa stated that "***management is aware of the unit pricing project – acknowledging that the Contractor wants payment for what is installed and that he does not ask for payment where there is an under run or de-obligation***." *See* email from D. Driapsa, June 21, 2012, attached as **Exhibit S**. (Emphasis added)

- Further, and contrary to the Government's position in the termination for default that Bowman's work was somehow defective, Mr. Driapsa also stated that the Park "***management agrees that they are getting a good trail on time and within or very close to the budget***." *See Id.* (Emphasis added)

    **b.   Previously Undisclosed Handwritten Notes on Official Project Documents**

37.    Highlighting the troublesome representation by the Government's counsel that the late disclosed documents were "most[ly] duplicates," many of the alleged "duplicate" documents actually contained handwritten notes that were not included in the prior version of the same

16

document disclosed earlier. For example, the original Progress Meeting Agenda for September 18, 2012, disclosed by the Government in its initial disclosures looked, in part, like this:



However, the alleged "duplicate" version of this Progress Meeting Agenda that the Government failed to timely disclosed looked, in the same area, like this:



As the Court can see, the late disclosed version of this Progress Meeting Agenda contains a handwritten note in which someone acknowledged that the CO (Contracting Officer) believed "there is room for compromise to pay the contractor" – a position that the Government formally denied then and continues to deny now. *See* Sept. 18, 2012 Progress Meeting Agenda, both versions attached as **Exhibit T**. The Government's late disclosure completely denied Bowman the opportunity to explore this note, and many others, during depositions and other discovery.

    c.  **Draft Versions of Previously Disclosed Documents**

38.    Further belying the Government's claim that the late disclosed documents were

17

"most[ly] duplicates," many of the alleged "duplicate" documents are draft versions of a final version that was sent to Bowman and included as part of the Government's initial disclosures. Underlying the significance of some of these drafts that the Government prevented Bowman from using during depositions, the draft version of the Government's Cure Notice #1 included comments from an unknown author admitting that "some changes [to the bike trail] have already been determined in the field by the government." *See* draft version of Cure Notice #1, attached as **Exhibit U**. However, in this lawsuit, the Government denies that any substantial changes occurred "in the field by the government."

39.     Additionally, this same draft version of Cure Notice #1 also includes a comment asking, "***Didn't we already waive this contract requirement?***" with respect to a survey requirement. *See Id*. (Emphasis added). The Government's belief that certain contract requirements were waived is obviously an area of examination that counsel would have liked to explore during depositions and other discovery, but was denied the opportunity to do so by the Government's late disclosure.

### d.     Previously Undisclosed Critical Memoranda

40.     Previously undisclosed memoranda prepared by Government employees are also included in the Government's late disclosure of 2,928 pages of Project-related documents. The memoranda are highly relevant to the issues at the heart of this lawsuit. For example, the late disclosed documents included an internal Government memorandum to file that appears to have been issued prior to bid and the start of construction. This memorandum indicates that the Government changed the design documents "from using mostly fill and minimal of blasting of rock to using less fill and more blasting of rock." *See* Memo to File, attached as **Exhibit V**.  As

noted above, and directly contradicting the design change referenced in this memorandum, actual site conditions ended up requiring more fill and less blasting of rock, which goes to the heart of the problems with this design change, the problems with the plans used for construction and Bowman's claims in this lawsuit. The Government's late disclosure of this memorandum, and others, denied Bowman the opportunity to explore in depositions and other discovery whether there was an engineering basis for this pre-bid design change.

### e.   Handwritten Notes with Government Admissions of Fault

41.   Another category of previously undisclosed materials contained in the Government's late disclosure of 2,928 pages of Project-related documents were handwritten notes obviously prepared by critical Government witnesses. The number of such notes that are relevant to this lawsuit are voluminous. Included in the notes is a stunning admission of fault apparently by the Contracting Officer (Dale Allen) that was ***recorded the day before the Government issued its Cure Notice #1 that served as the basis for its termination for default***:



*See* Handwritten Note, attached as **Exhibit W**.

Obviously, and considering the Government denied any fault during the course of its dealings with Bowman during the Project and has continued to do so in this lawsuit, Bowman's counsel would have liked to question deposition witnesses about a note in which the Government

admits that its "fault . . . would have eliminated the need for cure." However, the Government denied Bowman the opportunity to explore this issue by its wholesale disregard of its discovery obligations under the Rules.

### III.   ARGUMENT

#### A.   THE GOVERNMENT'S NEGLIGENT DISREGARD FOR ITS DISCLOSURE OBLIGATIONS WARRANTS SANCTIONS UNDER R.C.F.C. 37(C)

The Government's dilatory conduct at every step of the disclosure and discovery process has substantially prejudiced Bowman by improperly hindering Bowman's ability to determine an appropriate discovery strategy, adequately prepare for key fact witness depositions and ultimately present its case at trial. The Government's disclosure of 2,928 pages of Project-related documents the day before Mr. Driapsa's deposition was particularly egregious and prejudicial, especially given Mr. Driapsa's central role in the events giving rise to this lawsuit and the fact that the Government knew that counsel was out of office traveling for the deposition. As set forth in detail above, these late disclosed documents are highly relevant and, contrary to the Government's representation at the deposition, they are not mostly duplicative of documents previously produced.

The Government cannot claim its late disclosure is justified because it admits these documents were just sitting at the agency's office where the Project is located. Obviously, the Government knew that this office had witnesses and documents relevant to this lawsuit because, beyond the fact that common sense dictates as much, it eventually contacted this office for just that purpose. The fact that the Government did not originally check with this office in connection with preparing and serving its initial disclosures is negligent at best.

The negative impact of the Government's late disclosure on Bowman's trial preparation

and presentation cannot be understated. A large portion of the late disclosed documents are internal documents to which Bowman was not privy during the course of its involvement in the Project and only became aware of through this lawsuit. It cannot be reasonably disputed that these late disclosed documents contain a wealth of evidence detrimental to the Government that was conspicuously absent in the documents originally disclosed. Undersigned counsel can unequivocally state that Bowman's discovery strategy and deposition questioning would have been different if counsel had access to these documents earlier considering the significant nature of the information contained in these documents, which is detailed above and includes:

- Admissions of fault by the Government;

- The Government's internal agreement with the positions espoused by Bowman that the Government was externally denying;

- Admissions by the Government that Bowman had performed its work on time and in accordance with the plans; and

- Government memoranda shedding light on pre-bid design changes that ultimately resulted in the Project problems that are at the heart of this lawsuit.

Bowman did not receive the late disclosed documents until after all of its fact depositions had been conducted and the fact discovery deadline was nearly expired. Significantly, none of the witnesses deposed reside in Colorado, the location of trial in this matter. As such, Bowman videotaped the depositions of Mr. Allen and Ms. Thomas so that Bowman could present their testimony visually to the Court at trial for maximum impact. Because the Court attended Mr. Driapsa's deposition, Bowman did not have to do the same for him. However, the testimony obtained from all three witnesses is essentially "watered down" and incomplete because

Bowman's counsel did not have the benefit of these highly relevant and significant documents.

Bowman is a small, family run company who is pursuing this lawsuit at great expense. Out of state, videotaped depositions are costly and the Government has negatively affected the value that Bowman received from this expensive endeavor by its disregard of its discovery obligations. This detrimental affect carries over to Bowman's trial presentation considering Bowman intends on using these depositions at trial. Bowman's damages in this matter exceed $1.4 million and Bowman is not interested in further delay of its day in Court or incurring additional expense in re-doing its discovery.

The Government's latest misconduct requires sanctions under R.C.F.C. 37(c), which provides in pertinent part:

> ***If a party fails to provide information or identify a witness as required by R.C.F.C. 26(a) or (e), the party is not allowed to use that information or witness*** to supply evidence on a motion, at a hearing, or ***at a trial***, unless the failure was substantially justified or is harmless. ***In addition to or instead of this sanction, the court,*** on motion and after giving an opportunity to be heard:
>
> > (A) ***may order payment of the reasonable expenses, including attorney's fees, caused by the failure***;
> >
> > (B) [not used]; and
> >
> > (C) may impose other appropriate sanctions, including any of the orders listed in R.C.F.C. 37(b)(2)(A)(i)-(vi).

R.C.F.C. 37(c)(1) (emphasis added).

Thus, the "default sanction" under Rule 37(c) is the "inability to use the nondisclosed information as evidence at trial unless the nondisclosure was substantially justified or harmless." *K-Con Bldg. Sys., Inc. v. United States*, 106 Fed. Cl. 652, 660 (2012).  In addition to this default sanction, the Court has authority to award fees and costs against the non-disclosing party or to

impose any additional sanctions listed in R.C.F.C. 37(b)(2)(A), which include an order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part; [or]
>
> (vi) rendering a default judgment against the disobedient party . . . .

R.C.F.C. 37(b)(2)(A).

With regard to the "default sanction," "[t]he government, as the offending party, bears the burden of establishing substantial justification or harmlessness." *K-Con Bldg. Sys., Inc.*, 106 Fed. Cl. at 660. "Substantial justification is justification sufficient to satisfy a reasonable person that parties could disagree as to whether compliance with the disclosure requirement was required." *Id.* (quoting *Zoltek Corp. v. United States,* 71 Fed.Cl. 160, 170 (2006)). "In determining whether a failure to disclose documents during discovery is harmless, courts generally consider (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; [and] (4) the possibility of curing the prejudice." *Id.* at 661 (internal quotations omitted).

Notably, the award of fees and costs called for by Rule 37(c)(1)(A) may be awarded *without* a substantial justification or harmlessness inquiry:

> Among the other available sanctions is the payment of plaintiff's reasonable expenses, including attorney's fees, caused by the government's violation. Indeed, the court has even greater discretion to award costs than it does to award the default sanction because the former is not limited to discovery violations that

lack substantial justification or cause harm to the opposing party.

*Id.* at 663.

Here, there is no question that the Government failed to timely produce documents required as part of its initial disclosure obligation. The 2,928 pages of documents delivered the day before Mr. Driapsa's deposition relate directly to the Project and were stored in the very National Park Service office as the location of the Project. The documents fall directly within the scope of the Government's Rule 26 disclosure obligation. *See* R.C.F.C. 26(a)(1)(A)(ii) ("[A] party must, without awaiting a discovery request, provide to the other parties . . . a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses . . . ."); R.C.F.C. 26(e)(1)(A) ("A party who has made a disclosure under R.C.F.C. 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .").

The case of *Northrop Grumman Sys. Corp. v. United States*, 126 Fed. Cl. 602 (2016), where the Court imposed sanctions for the Government's failure to abide by its disclosure and discovery obligations, is particularly instructive here. There, the Court rejected the Government's purported justification for the nondisclosure, *i.e.*, the "decentralized nature" of the U.S. Postal Service, the same rationale the Government appears to be relying upon here:

> The other two later productions, although smaller in quantity, are troubling. Both are the result of what can, at best, be described as negligence on the part of USPS or, at worst, a reckless disregard of its obligation to timely produce relevant documents to plaintiff. **Defendant argued that these lapses were justified by the**

> ***decentralized nature of the Postal Service and the resulting difficulty in
> assuring that all documents had been produced. We find that unconvincing,
> however, when both sets of the latest-produced documents were from locations
> or repositories known to USPS well in advance and both of which had been the
> subject of assurances from USPS personnel that they had been sufficiently
> plumbed for relevant materials.*** Those representations were either untruthful or
> negligently made.  It is clear that these lapses were not justified. Greater care
> should have been taken to meet court ordered deadlines. ***Plaintiff has had to take
> depositions in the interim without the benefit of having reviewed those
> documents.  A sanction is warranted***.

*Id.* at 607-08 (emphasis added).

As a result of the Government's untimely disclosure, the Court precluded the
Government from using the documents "either in defending plaintiff's claims or in support of its
counterclaim to the extent that those documents were not produced earlier," in addition to a fee
award.  *See id.* at 608; *see also K-Con Bldg. Sys., Inc.*, 106 Fed. Cl. at 663 (awarding the "default
sanction" because "the government has not sustained its burden to demonstrate that its failure to
disclose the [subject subcontractor] documents during discovery was harmless," and also
awarding fees and costs because "[t]here would have been no need for plaintiff to pursue
sanctions in this case had the government produced the [subcontractor] documents during
discovery as required" and because "[t]he government's failure to produce the documents
hampered plaintiff's development and presentation of its case").

Much like the Government in the foregoing cases, the Government here has shown a total
disregard for its disclosure and discovery obligations. As detailed above, the Government has
shirked its obligations at every turn, requiring Bowman to incur unnecessary fees and costs in
dealing with the discovery issues created by the Government's conduct. Bowman has been
substantially prejudiced by having to take three key fact witness depositions without the benefit
of the Project-related files in the supplemental production, and the Government's discovery

misconduct has caused irreparable harm to Bowman's trial preparation and presentation. The Government should have to reimburse Bowman for the fees and costs it has expended in taking depositions for which is not receiving the full value of the amounts incurred in light of the Government's misdeeds.

Under these circumstances, Bowman respectfully asks the Court to enter an Order:

1. Allowing Bowman to introduce or rely on the documents in support of a motion or at trial, but precluding the Government from doing so;

2. Awarding Bowman its costs, including reasonable attorneys' fees, incurred in preparing for, traveling to and taking the depositions of Mr. Driapsa, Ms. Thomas and Mr. Allen for which Bowman did not have use of the documents; and

3. Awarding Bowman its costs, including reasonable attorneys' fees, in preparing this Motion.

Such sanctions are appropriate under Rule 37(c) and are necessary given the Government's pattern of discovery abuses to date.

**WHEREFORE,** for the reasons set forth above, Plaintiff Bowman Construction Company respectfully requests that the Court grant the relief requested herein and provide such further relief as the Court deems just and proper.

178075\00001\106402005.v1

Submitted this 10th day of January, 2020.

/s/ *Erin Frazee Masini*

Spencer L. Sears
**Fox Rothschild LLP**
1225 17th Street
Suite 2200
Denver, CO 80202
Phone: (303) 383-7617
Fax: (303) 292-1300
ssears@foxrothschild.com
*Appearing pending pro hac vice admission*

Erin Frazee Masini
**Fox Rothschild LLP**
1030 15th Street, NW
Suite 380 East
Washington, DC 20005
Phone: (202) 794-1190
Fax: (202) 461-3102
emasini@foxrothschild.com

*Attorneys for Bowman Construction
Company*

178075\00001\106402005.v1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 10th day of January 2020, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO R.C.F.C. 37(c)** was filed with the Court using the CM/ECF system which will send notification of such filing to opposing counsel of record:

*/s/*_____

178075\00001\106402005.v1