**No. 18-1822C**
**(Senior Judge Williams)**

---

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

**BOWMAN CONSTRUCTION COMPANY,**

**Plaintiff,**
**v.**

**THE UNITED STATES,**

**Defendant.**

---

### DEFENDANT'S REPLY TO PLAINTIFF'S
### RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

**OF COUNSEL:**

**ALEXANDER FICHTEL**
**Department of the Interior**

**JOSEPH H. HUNT**
**Assistant Attorney General**

**ROBERT KIRSCHMAN, JR**
**Director**

**PATRICIA M. MCCARTHY**
**Assistant Director**

**MICHAEL D. AUSTIN**
**Trial Counsel**
**Commercial Litigation Branch**
**Civil Division**
**United States Department of Justice**
**P.O. Box 480, Ben Franklin Station**
**Washington, D.C. 20044**
**Tel: (202) 616-0321**
**Fax: (202) 307-7644**

**May 15, 2020**

**Attorneys for Defendant**

## TABLE OF CONTENTS

**Page**

ARGUMENT ...........................................................................................................................3

    I.    Bowman Tacitly Concedes That Its Challenge To The Default
        Termination Is Untimely And That Its Default Termination Is Final
        And Conclusive ....................................................................................................3

    II.    The FAR And Bowman's Contract Prescribe Only Two Possible
        Recoveries In The Event Of Termination—Neither One Authorizes
        A So-Called "Damages" Recovery ......................................................................5

    III.    Alternatively, The Court Lacks Subject-Matter Jurisdiction To
        Entertain Bowman's So-Called "Affirmative Claims" Because
        They Are Identical To Bowman's Time-Barred Defenses To Its
        Default Termination ........................................................................................ 11

CONCLUSION .....................................................................................................................16

i

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alliance of Descendants of Texas Land Grants v. United States*,
    37 F.3d 1478 (Fed. Cir. 1994)........................................................................................ 7

*Best Foam Fabricators, Inc. v. United States,*
    38 Fed. Cl. 627 (1997) ................................................................................................. 8

*Bowers Investment v. United States*,
    104 Fed. Cl. 246 (2011) ............................................................................................. 12

*Folden v. United States*,
    379 F.3d 1344 (Fed. Cir. 2004) ................................................................................... 1

*Forman v. United States*,
    329 F.3d 837 (Fed. Cir. 2003) ..................................................................................... 7

*G.C. Casebolt Co. v. United States*,
    421 F.2d 710 (Ct. Cl. 1970) ........................................................................................ 8

*Gen'l Dynamics Corp. v. United States*,
    563 U.S. 478 (2011) ............................................................................................... 6, 9

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012) ..................................................................................................... 1

*Hanover Ins. Co. v. United States*,
    116 Fed. Cl. 303 (2014) ............................................................................................... 4

*J. Cooper & Assoc Inc. v. United States*,
    47 Fed. Cl. 280 (2000) ............................................................................................... 12

*J.D. Hedin Constr. Co. v. United States*,
    187 Ct. Cl. 45, 408 F.2d 424 (1969) ........................................................................... 6

*John Reiner & Co. v. United States.*,
    325 F.2d 438 (Ct. Cl. 1963) ........................................................................................ 8

*Kellogg Brown & Root Servs, Inc. v. United States*,
    115 Fed. Cl. 46 (2014) ............................................................................................... 12

*Kenney Orthopedic LLC v. United States*,
  88 Fed. Cl. 688 (2009) ................................................................ 10

*Lisbon Contractors v. United States*,
  828 F.2d 759 (Fed. Cir. 1987) ...................................................... 6

*M. Maropakis Carpentry, Inc. v. United States*,
  609 F.3d 1323 (Fed. Cir 2010) .................................................... 11

*Malone v. United States*,
  849 F.2d 1441 (Fed. Cir. 1988) .................................................... 6

*McDonnell Douglas Corp. v. United States*,
  182 F.3d 1319 (Fed. Cir. 1999) ................................................. 6, 8

*McDonnell Douglas Corp. v. United States*,
  323 F.3d 1006 (Fed. Cir. 2003) .................................................... 6

*McDonnell Douglas Corp. v. United States*,
  37 Fed. Cl. 285 (1997) ............................................................... 14

*Palafox Street Associates, L.P. v. United States*,
  122 Fed. Cl. 18 (2015) ............................................................... 12

*Placeway Construction Co. v. United States*,
  920 F.2d 903 (Fed. Cir 1990) ..................................................... 12

*Roxco Ltd. v. United States*,
  60 Fed. Cl. 39 (2004) ........................................................... 10, 11

*Strickland v. United States*,
  423 F.3d 1335 (Fed. Cir. 2005) .................................................... 8

*United Partition Sys. Inc. v. United States*,
  59 Fed. Cl. 627 (2004) ................................................................ 7

iii

**Statute**

41 U.S.C. § 7104(b)(3) ................................................................................................ 1

**Regulations**

FAR 49.203 ................................................................................................................ 7

FAR 49.402-2(a) ............................................................................................... 6, 9, 10

FAR 52.236-2 ........................................................................................................... 13

FAR 52.243-1 ........................................................................................................... 13

FAR 52.249-02 ..................................................................................................... 4, 14

FAR 52.249-10c ....................................................................................................... 15

FAR 52.249-2 ......................................................................................................... 6, 9

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **BOWMAN CONSTRUCTION COMPANY.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 18-1822C** |
| **v.** | ) | **(Senior Judge Williams)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S
### RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Pursuant to this Court's order dated May 7, 2020, defendant, the United States, respectfully submits this reply to plaintiff, Bowman Construction Company's (Bowman), response to our motion to dismiss.

In our moving brief, we demonstrated that this Court lacks subject-matter jurisdiction to entertain the complaint Bowman filed on November 28, 2018 because the complaint is time-barred.[1]  We showed that Bowman failed to timely appeal the termination for default that the Government had issued it on October 15, 2012.  As we explained, discovery had eliminated any potential procedural excuses for Bowman's failure to appeal the default termination within one year after receiving the termination for default letter, as required by the Contract Disputes Act (CDA), 41 U.S.C. § 7104(b)(3).

---

[11]     Ignoring the controlling precedent we cited holding that subject-matter jurisdiction may be raised at any time, as well as *sua sponte*, Def. Mot. at 7 (quoting *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citation omitted)), Bowman devotes an entire section of its response to its "colorable" argument that we are somehow "judicially estopped" from challenging subject-matter jurisdiction via a "judicial admission" that caused our challenge to be "waived."  Pl. Resp. at 24.  It is settled that "subject-matter jurisdiction can never be waived or forfeited."  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

In its response to our motion, Bowman confirms our conclusions, reached following discovery, by failing to deny that the default termination that it, until now, had purported to challenge in its complaint is, in fact, final and conclusive.  Bowman now accepts that its termination for default is lawful and unappealable.  But instead of voluntarily dismissing its complaint, Bowman, in its response to our motion to dismiss, tacks in a different direction.  Now, Bowman argues that its termination for default was not only an inconsequential trifle, but actually a veritable windfall.  In Bowman's view of Government contracts, a final, conclusive, and unappealable termination for default presents a defaulting contractor with a unique opportunity to secure a far more lucrative common-law "damages" recovery.  By purporting to evade the caps inherent in its contract's express termination for convenience clause (itself explicitly invoked in paragraph 109 of Bowman's complaint), which would have governed Bowman's monetary recovery had Bowman timely and successfully challenged its default termination, Bowman now contends that a final and conclusive default termination liberates the Court to award it unlimited common-law "damages" that would punish the Government, not Bowman, for Bowman's now-uncontested default termination.  Thus, according to Bowman, smart and savvy defaulted contractors *maximize* their potential monetary recoveries by ignoring all of the rules and express terms of their contracts and by deliberately failing to challenge their default terminations as required by the CDA.

In reality, of course, a default termination is not a boon but rather a drastic sanction. It presents real and harsh consequences—including monetary ones—for the defaulted contractor. Bowman agreed to the terms of its contract when it accepted its award, but now Bowman asks this Court to rewrite, after the fact, the plain terms of its contract, as well as established provisions of the Federal Acquisition Regulation (FAR).  Bowman can cite no persuasive legal

2

authority that would permit the Court to do such a thing.  Because Bowman's opposition to our motion to dismiss turns Government contracts law on its head, defies the plain language of its terminated contract, flouts binding and controlling precedent, and presents no plausible demonstration of jurisdiction, the Court should grant our motion to dismiss.

## <u>ARGUMENT</u>

Bowman argues that it still may invoke this Court's limited jurisdiction despite its failure to timely appeal the termination because its affirmative monetary "claims" are supposedly separate and distinct from its admittedly waived and abandoned defenses to its indisputably final and conclusive default termination.  Pl. Resp. at 7 ("The Government's termination for default alone cannot serve to trigger the time for Bowman to appeal its claims for money damages because no such claims had been submitted at the time he issued the termination for default.") (citation omitted).  Because Bowman's response brief either ignores or distorts the CDA's comprehensive scheme for dispute resolution and judicial review, the plain meaning of long-established FAR provisions, and controlling judicial precedent, we are compelled to reiterate below the scheme as settled law provides, and demonstrate how Bowman fails to satisfy its heavy burden to establish this Court's jurisdiction to entertain its complaint.

## I.  **Bowman Tacitly Concedes That Its Challenge To The Default Termination Is** <u>**Untimely And That Its Default Termination Is Final And Conclusive**</u>

In its response brief, Bowman does not dispute that its challenge to the default termination is untimely.  *See generally*, Pl. Resp.  Rather, Bowman states, in a carefully-worded sentence, that "[i]n seeking to dismiss *all* of Bowman's claims, the Government incorrectly asserts that Bowman is challenging the Government's termination for default."  *Id.* at 2-3 (emphasis added).  Bowman further denies that it needed to bring this action within 12 months of

the termination because "Bowman's claims here are breach of contract-based claims for damages, which are affirmative, contractor claims," adding that "a [suit] challenging the propriety of a default termination is not the same as a claim for money damages resulting from the default termination." *Id*. at 3 (citing *Hanover Ins. Co. v. United States*, 116 Fed. Cl. 303, 310 (2014)); *see also Hanover*, 116 Fed. Cl. at 308 (holding that, in a termination for default challenge, the Court lacked jurisdiction to award a termination for convenience recovery due to plaintiff's undisputed failure to present its termination for convenience settlement proposal to the contracting officer).

Bowman's modifying clause, "[i]n seeking to dismiss *all* of Bowman's claims," Pl. Resp. at 2 (emphasis added), presumably shields Bowman from rebuke for its otherwise demonstrably false assertion that its complaint does not challenge the default termination. Although Bowman insists that it "does not assert a nonmonetary challenge to the validity of the Government's termination for default as alleged by the Government," *id.* at 4, in Count IV, self-labeled by Bowman itself as "Declaratory Judgment," Compl. at 17, Bowman explicitly asks the Court to declare that "The Government improperly terminated the Contract for default;" that "the termination for default is converted to a termination for convenience pursuant to FAR 52.249-02—Alternate I, which is incorporated into the Contract;" and that "Bowman is entitled to all of the rights afforded by FAR 52.249-02—Alternate I, including, but not limited to, the right to prepare and submit a settlement proposal to the Government." *Id*. ¶ 109. Bowman's response to our motion to dismiss simply elides Count IV. *See, e.g.,* Pl. Resp. at i (table of contents listing only counts I, II, and III), *id*. at 14-20 (referencing only Counts I-III). In fact, Bowman states that its "breach of contract-based claims here will require the Court to review and rule on the following factual and legal issues that are distinct from a review of a termination for default," *id*.

4

at 14, as if "a review of the termination for default" were a hypothetical cause of action floating somewhere off in the ether and not actually pleaded in Count IV of the complaint.  Although Bowman later asserts that our motion "Improperly Conflates All Four Of Bowman's Claims Into One," *id*. at 21, it remains unclear as to whether Bowman is alluding to Count IV, or whether it is contending that it is asserting four so-called "claims" in the first three counts of its complaint.  In any event, any mystery regarding Bowman's feelings about Count IV appears to be resolved by the end of Bowman's response, at which point Bowman abruptly declares that any argument regarding a termination for convenience recovery is "moot."  *Id*. at 23.

Although Bowman may be loath to say so expressly, its entire response brief may be construed as an implied consent to dismissal of Count IV as untimely.  *See generally*, Pl. Resp.

## II.     The FAR And Bowman's Contract Prescribe Only Two Possible Recoveries In The Event Of Termination—Neither One Authorizes A So-Called "Damages" Recovery

Having effectively conceded the untimeliness of its challenge to the default termination, Bowman posits that its termination for default has no monetary consequences for it at all.  Now freed, according to Bowman, from the onerous constraints of a successful challenge to a default termination—that is, requiring the Government to justify the default termination, and then proving that its defenses excused its default, and then proving further that its requests for equitable adjustment were sufficient to increase the contract price so as to reduce or eradicate any loss adjustment that may be applied to decrease its termination for convenience recovery— Bowman believes that all it need do now is prove up its common-law "damages" in this Court,

heedless of the terms of its default-terminated contract, the FAR, the CDA, and judicial precedent.[2]

Unfortunately for Bowman, Government contractors who challenge their default terminations the old-fashioned way are not suckers, and Bowman's now-uncontested default termination *does* have adverse monetary consequences for it. *See McDonnell Douglas II*, 323 F.3d at 1015 (quoting *J.D. Hedin Constr. Co. v. United States*, 187 Ct. Cl. 45, 408 F.2d 424, 431 (1969) ("stating that 'a default termination is a drastic sanction which should be imposed (or sustained) only for good grounds and on solid evidence.'")). Once Bowman's contract was terminated, the contract's plain language authorized only two possible recoveries for Bowman—a termination for default recovery as prescribed by FAR 49.402-2(a), or, if Bowman were able to successfully challenge its default termination, a termination for convenience recovery as prescribed by FAR 52.249-2–Alternate I. *E.g.,* Compl. ¶ 109. Neither outcome can vitiate the undisputed fact that Bowman's contract was never completed nor had it expired—which would have allowed for resolution of claims timely brought within the CDA's six-year statute of

---

[2] Bowman's response brief repeatedly misstates Government contracts law. Bowman questions whether a default termination is a Government claim, Pl. Resp. at 7-8, but even the Supreme Court has recognized this indisputable point of law and its highly material consequences. *Gen'l Dynamics Corp. v. United States*, 563 U.S. 478, 487 (2011) (the Government's termination for default claim could not be sustained because contractor's superior knowledge defense to default was nonjusticiable); *see also Malone v. United States*, 849 F.2d 1441, 1443 (Fed. Cir. 1988). Bowman also suggests that the seminal failure to make progress precedent of *Lisbon Contractors v. United States*, 828 F.2d 759 (Fed. Cir. 1987), is binding only on the boards of contract appeals, Pl. Resp. at 8. It is not. *E.g., McDonnell Douglas Corp. v. United States (McDonnell Douglas II)*, 323 F.3d 1006, 1013 (Fed. Cir. 2003) (appeal from Court of Federal Claims judgment) (quoting *McDonnell Douglas Corp. v. United States (McDonnell Douglas I)*, 182 F.3d 1319, 1329 (Fed. Cir. 1999) (citing *Lisbon Contractors*, 828 F.2d at 765 ("holding that the government bears the burden of proof on the issue of whether the default termination was justified."")).

limitations, but, rather, it was *terminated*.  Although Bowman relies on *Forman v. United States*, 329 F.3d 837, 841-42 (Fed. Cir. 2003), to argue that its so-called "claims" accrued when "the contract was complete," Pl. Resp. at 5, Bowman's contract here was never "complete"—it was terminated for default.[3]

In the event of termination, again, Bowman's contract unambiguously dictated only two possible recoveries for Bowman.  The latter recovery, in the inalterable termination setting presented here, would have been far more favorable to Bowman (as Bowman itself recognized by asserting Count IV in its complaint), and it would have required Bowman to submit its monetary claims to the contracting officer, including any requests for equitable adjustment to increase the contract price so as to reduce the downward effect of any loss adjustment that may be applied to its termination for convenience recovery.  *See* FAR 49.203; *cf. United Partition Sys. Inc. v. United States*, 59 Fed. Cl. 627, 641 (2004) (explaining the "stark contrast" and "substantive difference between these types of termination").  If Bowman had been dissatisfied with the contracting officer's resolution of its termination for convenience settlement, then this Court would have had jurisdiction to review the dispute and adjudicate Bowman's requests for equitable adjustment (which, in this case, would have mirrored Bowman's so-called "claims" asserted in Counts I through III), provided that Bowman had brought a timely action challenging the termination for convenience settlement.  This is the comprehensive scheme for dispute resolution and judicial review for which the CDA provides, and the plain terms of the contract to which Bowman agreed.

---

[3]     Bowman also cites *Alliance of Descendants of Texas Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994), a Tucker Act case involving takings that has nothing to do with the CDA and in no way addresses whether default-terminated Government contractors may bring affirmative, extra-contractual claims for money "damages."  *See* Pl. Resp. at 5.

Bowman's response entirely ignores our explanation of the range of Bowman's legally permissible monetary recoveries (assuming its challenge to the default termination were timely) in our motion to dismiss.  *See* Def. Mot. at 11-12.  We explained that, even were the Court to accept the allegations in Bowman's complaint, the Court would convert the termination for default to a termination for convenience, and Bowman's recovery would be determined by the terms of the contract that it signed—that is, via a claim to the contracting officer.  *See, e.g., Best Foam Fabricators, Inc. v. United States,* 38 Fed. Cl. 627, 638 (1997) (stating that "the rule has been established that if the contract contains a termination for convenience clause and the contracting officer could have invoked the clause instead of terminating, rescinding or repudiating the contract on some other invalid basis, the court will constructively invoke the clause to retroactively justify the government's actions, avoid breach and limit liability"); *see also G.C. Casebolt Co. v. United States*, 421 F.2d 710, 712 (Ct. Cl. 1970) (citing *John Reiner & Co. v. United States*. 325 F.2d 438 (Ct. Cl. 1963)) (other citations omitted).[4]  As we explained in our motion to dismiss, here, Bowman's contract likewise contained a termination for convenience clause.  *See, e.g.,* Compl. ¶ 109.  Had Bowman timely challenged the default termination, and had the Government failed to justify the default termination, then the default termination would have been converted to a termination for convenience so as to avoid a breach. *See, e,g., McDonnell Douglas I*, 182 F.3d at 1329 ("Conversely, if the government is not able to make this showing, then the default termination was invalid and Contractors are entitled to a suitable recovery, presumably under a termination for convenience theory.").   Bowman's

---

[4]       Although Bowman's response brief entirely ignores the controlling Court of Claims precedent cited in our motion to dismiss, *see* Def. Mot. at 11-12, it is nonetheless binding on this Court.  *See Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005).

contract prescribes the terms of its monetary recovery under a termination for convenience. FAR 52.249-2; Comp. ¶ 109.

But here, because the default termination has been final and conclusive as a matter of law for more than six years, Bowman is not legally entitled to a termination for convenience recovery (which Bowman appears to concede in its response brief, Pl. Resp. at 22-23).  As the Supreme Court has explained, the contract "authorizes a court to convert a default termination into a termination for convenience only if it 'determine[s] that the Contractor was not in default, or that the default was excusable.'"  *Gen'l Dynamics*, 563 U.S. at 489 (quoting FAR 52.249-9(g) (2010)).  Because Bowman failed to timely challenge its default termination, the Court lacks subject-matter jurisdiction to determine that Bowman was not in default, or that its default was excusable.  Bowman has waived any ability to obtain a termination for convenience recovery.

Given Bowman's now-uncontested untimeliness, under the plain terms of the contract to which Bowman agreed, Bowman's monetary recovery is expressly limited to payment for work completed and accepted by the Government at the time of termination.  Bowman's contract provided explicitly that "[u]nder a termination for default, the Government is not liable for the contractor's costs on undelivered work and is entitled to the repayment of advance and progress payments, if any, applicable to that work." FAR 49.402-2(a).  Again, these are the plain terms of the contract to which Bowman freely agreed.

Yet, notwithstanding the plain and unambiguous language of its contract, Bowman insists that an as-yet unidentified source of legal authority somehow would authorize this Court to override and rewrite the express terms of the default clause in Bowman's contract to award Bowman extra-contractual, common-law money "damages."  In its response to dismiss,

9

Bowman, again, fails to identify *any* persuasive legal authority that would authorize such a remarkable and unprecedented abrogation of the express terms of the contract to which Bowman freely agreed.

At best, Bowman bootstraps the CDA's six-year statute of limitations for affirmative contractor claims to imply that it provides this Court with a "substantive" source of legal authority to rewrite the terms of its contract, as well as long-established FAR provisions.  Pl. Resp. at 4; *see also id.* at 10-14.  Bowman does not explicate this *non sequitur*, and it relies heavily on a non-binding and unpersuasive decision, *Kenney Orthopedic LLC v. United States*, 88 Fed. Cl. 688 (2009), to argue that its affirmative extra-contractual money "claims" may be used to override and rewrite the plain and unambiguous terms of FAR 49.402-2(a).  *See* Pl. Resp. at 10-11, 13.  But like Bowman, *Kenney Orthopedic* identified absolutely no legal authority that would have permitted the Court to contemplate rewriting the plain and express terms of the default provision, not to mention the FAR itself.  *See generally*, *id*., 88 Fed. Cl. 688.  Indeed, *Kenney Orthopedic* did not even acknowledge that contract's default termination provision and the contractually-prescribed recovery for the defaulted plaintiff.  *See generally, id.* Nor does *Kenney Orthopedic* justify the peculiar premise of its holding, which is that contractors who are terminated for default are entitled to potentially far more generous "damages" awards than contractors whose contracts are terminated for convenience, who have to settle for termination for convenience recoveries as prescribed by their contracts.

Bowman itself highlights the absence of any substantive legal authority permitting the Court to rewrite the terms of the default provision by citing another non-binding and unpersuasive decision, *Roxco Ltd. v. United States*, 60 Fed. Cl. 39 (2004), which, Bowman concedes, relied on an explicitly equitable concern that "'the preparation of an equitable

adjustment claim may be a complicated and time-consuming process[]'" to invoke the six-year

CDA statute of limitations to allow the contractor to submit extra-contractual claims in

contravention of the default clause.  Pl. Resp. at 12 (quoting *Roxco*, 60 Fed. Cl. at 47).  But

*Roxco* cited no *legal* authority for the conclusion that Congress intended for the six-year statute

of limitations, alone, to permit contractors to contravene the agreed-upon terms of their contracts

in the absence of any substantive source of law.  *See Roxco*, 60 Fed. Cl. at 47.  And like *Kenney

Orthopedic*, *Roxco* did not address the contract's default clause or its prescribed recovery for the

defaulted plaintiff.  *See, generally, Roxco*, 60 Fed. Cl. 39.  Also like *Kenney Orthopedic*, *Roxco*

offers no logical rationale for its holding that default-terminated contractors are entitled to

monetary recoveries that are potentially far more generous than those received by contractors

whose contracts are terminated for convenience.  Bowman does nothing to fill in these holes, nor

does it even attempt to reconcile these decisions with Federal Circuit precedent, the FAR, and

logic.

**III.    Alternatively, The Court Lacks Subject-Matter Jurisdiction To Entertain
Bowman's So-Called "Affirmative Claims" Because They Are Identical To
Bowman's Time-Barred Defenses To Its Default Termination**

Even assuming, for argument's sake, that the Court could possess jurisdiction over

Bowman's affirmative money claims that were unrelated to and not precluded by the default

termination, none of Bowman's extra-contractual money claims would fall into that category.

"[We] hold that a contractor seeking an adjustment of contract terms must meet the

jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim

against the government as an affirmative claim or as a defense to a government action."  *M.

Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1331 (Fed. Cir 2010).  *Maropakis*

holds that if a claim is offered as an affirmative monetary claim, the affirmative claim must

concern facts and circumstances unrelated to the facts and circumstances of the Government's default claim.  Here, Bowman contends that: (1) it has styled three of the four counts of its complaint as seeking affirmative monetary claims as opposed to a defense to the Government's default claim; (2) it has presented those claims to the contracting officer within six years of claim accrual, and (3) the contracting officer did not issue a final decision within 60 days, allowing it to bring this action on a deemed denial basis.

But the three remaining counts in Bowman's complaint still do not fall within the Court's jurisdiction.  "The need to determine whether a CDA claim is the same as another arises in a variety of contexts."  *Kellogg Brown & Root Servs, Inc. v. United States*,115 Fed. Cl. 46, 53-54 (2014).  Further, *"this court must examine the operative facts and relief sought in the two CDA claims, not the legal labels placed on those claims, to determine whether those two CDA claims are the same." Id*. at 53-54.  *Accord Scott Timber Co. v. United States,* 333 F.3d 1358, 1366 (Fed. Cir. 2003) ("Scott may have posed slightly different legal theories for the breach, but Scott's claim is essentially the same as presented to the CO.").  "To determine whether two or more separate claims, or only a fragmented single claim, exists, the court must assess whether or not the claims are based on a common or related set of operative facts.  If the court will have to review the same or related evidence to make its decision, then only one claim exists." *Placeway Construction Co. v. United States*, 920 F.2d 903, 907 (Fed. Cir 1990).  "Multiple claims typically involve separate and distinct disputes over separate and distinct decisions under a single contract where findings made by the court or the agency boards would not affect the claims before the other*." Palafox Street Associates, L.P. v. United States* 122 Fed. Cl. 18, 28 (2015) (citations omitted).  "The question of whether two claims involve the same set of transactional facts is 'to be determined pragmatically, giving weight to such considerations as to whether the facts are

related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Bowers Investment v. United States*, 104 Fed. Cl. 246, 257 (2011) (quoting Restatement (Second) Judgments § 24(2) (1982).).  A new claim is "one that does not arise from the same set of operative facts as the claim submitted to the contracting officer." *J. Cooper & Assoc Inc. v. United States*, 47 Fed. Cl. 280, 285 (2000).

As an initial matter, with the exception of Bowman's claim for loss of bonding power, all of Bowman's affirmative claims involve work supposedly performed but presumably unaccepted at the time of termination, thereby rendering recovery barred by the plain language of the contract's default clause.  For example in paragraph 83 of its complaint, Bowman seeks, as breach damages, among other things, $25,000 for survey error, and $20,000 for in scope work performed by subcontractor Sjoblom Landscape.  Bowman makes no allegation that it had submitted invoices for that work that were not paid.  Bowman acknowledges in its complaint that it had been paid for all of its invoices save $89,054, which had been retained for various purposes.  Compl. ¶ 81.  Consequently, it appears that either Bowman is seeking double recovery or is attempting to evade the consequences of the termination it failed to timely appeal.  In either scenario, Bowman cannot receive more monies than it has already been paid.  To the extent that Bowman believes that it has incurred costs for which it has not been compensated, Bowman forfeited its right to seek those payments when it did not appeal the termination for default.  Such is the consequence of its actions.

Bowman also seeks $324,329.58 in damages for something it calls loss of bonding power.  *See* Compl. at ¶ 93.  Bowman can receive payment for loss of bonding only if the termination is converted into a termination for convenience and if the loss of bonding power is

compensable under a termination for convenience settlement proposal.  Bowman however,

explicitly contends

> This in **no way** cancels out a contractor's monetary rights under
> any of the many other remedy-granting clauses, and any number of
> other remedy-granting clauses in federal government contracts,
> including the Changes clause, the Differing site conditions clause,
> and any number of other remedy-granting clauses.  *See e.g.* FAR
> 52.243-1, FAR 52.236-2.  Absolutely nothing in the Termination
> for Convenience clause negates Bowman's rights under such other
> clauses. As it stands, Bowman's failure to timely appeal the
> termination precludes any payment for loss of bonding power,
> regardless of the legal label attached to its claim.

Pl. Resp. at 22.  As is clear from this excerpt of Bowman's response, Bowman fundamentally

misunderstands the way in which a termination for convenience clause (which recovery Bowman

had admittedly forfeited here) operates.  Although Bowman thinks it would have been

"inexplicab[le]," *id*., for it to have submitted its termination for convenience settlement proposal

to the contracting officer without a conversion of its default termination, thereby allowing the

Court to exercise jurisdiction over all quantum issues presented in the default litigation, *id*., that

is precisely what diligent contractors who timely challenge their default terminations do.  *See,*

*e.g., McDonnell Douglas Corp. v. United States*, 37 Fed. Cl. 285, 287 (1997) (defaulted

contractors submitted their certified termination for convenience settlement proposal to the

contracting officer within six months of their default termination).

Moreover, Bowman does not understand that the very termination for convenience

provision that it invokes in paragraph 109 of its complaint itself *provides for adjudication of a*

*contractor's requests for equitable adjustment* in determining a termination for convenience

settlement amount.  FAR 52.249-02.  Those "claims" are determined under the auspices of the

termination for convenience clause itself.  The termination for convenience clause does not

"cancel" anything out (except to the extent that Bowman has admittedly waived its ability to obtain a termination for convenience recovery).

In any event, Bowman has failed to meet its burden to show that the "claims" presented in Counts I through III of its complaint are separate and distinct from its waived defenses to its default termination.

Bowman's final and conclusive default termination was based in part on Bowman's failure to balance and shape embankment side slopes, aggregate sub-base and base-course to the lines, grades and details on the drawings and approved field changes.  Pl.Mot. Exh. D.  In its claim to the contracting officer, Bowman contended that "[t]he engineered drawings submitted with the invitation for bids were not based on a formal survey. Therefore elevations and slopes were estimated without proper verification."  Pl. Mot Exh B.  In its complaint, Bowman further maintains "[b]ecause of the Government's defective specifications and failure to take any steps, let alone professionally reasonable steps, to assess site conditions, Bowman Construction was forced to incur additional/or increased costs."  Compl. at ¶ 76.  As noted above, Bowman failed to make progress due in part to its inability to balance and shape the slopes.  That finding is final, conclusive, and unappealable.  Yet, Bowman asks this Court to exercise subject-matter jurisdiction to award Bowman money damages for its failure to make grade.  Bowman should have offered the slope issue as a defense to the termination, not as a sword seeking to recover monies that it is barred from receiving under the plain and unambiguous terms of its contract.

Likewise in Count II, Bowman alleges improper termination of contract.  As a matter of law, the default termination is final, conclusive, and unappealable.  Bowman does not explain how this Court can award money damages for an improper termination that is final, conclusive, and unappealable.  The only way for Bowman to have received a monetary recovery for an

15

allegedly improper termination would have been if the termination were converted into that of convenience.  Bowman implicitly agrees with us.  "Pursuant to FAR 52.249-10c, because Bowman Construction was not in default, and because any delay was excusable, Bowman is owed the rights and obligations it would hold if the Government had terminated the Contract for convenience."  Compl. ¶ 92.

## **CONCLUSION**

For these reasons, and for the reasons set forth in our moving brief, we respectfully request that this Court grant our motion to dismiss.

Respectively submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/PATRICIA M. MCCARTHY
PATRICIA M. McCARTHY
Assistant Director

Of Counsel

ALEXANDER FICHTEL
Department of the Interior

/s/MICHAEL D. AUSTIN
MICHAEL D. AUSTIN
Trial Attorney
Commercial Litigation Branch
Department of Justice
PO Box 480
Ben Franklin Station
Washington, D.C. 20530
(202) 616-0321
(202) 305-7644 (fax)

May 15, 2020                              Attorneys for Defendant

16